Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| JOSÉ ECHEVARRÍA BARBOSA Y ELBA JUSINO, LA SLG COMPUESTA POR AMBOS; Y OTROS<br><br>Recurridos<br><br>V.<br><br>MANATÍ MEDICAL CENTER Y/O DORADO HEALTH, INC. H/N/C MANATÍ MEDICAL CENTER; CORPORACIÓN 1; CORPORACIÓN 2; DR. WILFREDO GUTIÉRREZ COTTO; DR. ROY VILLAFAÑE FIGUEROA Y OTROS<br><br>Peticionario | TA2026CE00368 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Caso Núm.: AR2022CV01996<br><br>Sobre: Impericia Médica |
| --- | --- | --- |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 28 de abril de 2026.

El 25 de marzo de 2026, compareció ante este Tribunal de Apelaciones el doctor Roy Villafañe Figueroa (en adelante, Dr. Villafañe o parte peticionaria), mediante recurso de *certiorari.* Por medio de este, nos solicita que revisemos la *Resolución* emitida y notificada el 6 de febrero de 2026, por el Tribunal de Primera Instancia, Sala Superior de Arecibo. En virtud del aludido dictamen, el foro *a quo* declaró No Ha Lugar la *Moción en Solicitud de Sentencia Sumaria* presentada por la parte peticionaria y su aseguradora, Sindicato de Aseguradores para la Suscripción Conjunta de Seguros de Responsabilidad Médico-Hospitalaria (SIMED).

Por los motivos que adelante se esbozan, se expide el *certiorari* y se modifica la *Resolución* recurrida, únicamente a los fines de

establecer que no existe controversia genuina sobre si el Dr. Villafañe volvió a atender al joven JEEJ luego de contestar la consulta, consignado en la *Resolución* como el primer hecho en controversia. Así modificada, se confirma la *Resolución* recurrida.

**I**

El recurso que nos ocupa tiene su génesis en una *Demanda*, sobre daños y perjuicios por una alegada impericia médica. Allí, el señor José Echevarría Barbosa y la señora Elba Jusino adujeron que la muerte de su hijo, el joven JEEJ, fue causada por la negligencia del personal de salud del Manatí Medical Center.

Según surge del recurso, el joven JEEJ acudió a la sala de emergencias del Manatí Medical Center la noche del 26 de noviembre de 2021, luego de haber ingerido y haberse intoxicado con un pote de Clonazepam, Risperidona y Aspirina. Pertinente al recurso ante nos, luego de haber sido tratado inicialmente, el 27 de noviembre del 2021, el doctor Wilfredo Gutiérrez (quien es codemandado) elevó una consulta para ver si correspondía darle al paciente el alta médica. El Dr. Villafañe contestó la consulta, en conjunto con la doctora Judianys Santiago (Dra. Santiago), y aprobó el traslado del paciente a una institución psiquiátrica. Este traslado no se materializó, debido a que el joven falleció ese mismo día. Los demandantes alegaron que ambos galenos—el Dr. Villafañe y la Dra. Santiago—fueron negligentes al atender la consulta, y que dicha negligencia aportó a la causa de la muerte del joven JEEJ.

Transcurridos varios trámites procesales, el 10 de noviembre de 2025, la parte peticionaria presentó *Moción en Solicitud de Sentencia Sumaria*. Allí esgrimió que no había controversia sobre los hechos materiales, y que de la prueba surgía que el Dr. Villafañe actuó como residente para el 21 de noviembre de 2021, por lo cual no adviene en responsabilidad por su conducta médico, sino que la parte responsable sería su médico-supervisor (en este caso, la Dra.

Santiago). En apoyo de su solicitud, la parte peticionaria presentó un *Addendum,* el cual contenía la evaluación del paciente que realizó el Dr. Villafañe, y unas páginas de la deposición del perito de los demandantes, el doctor Pérez Pabón.

Por su parte, los recurridos presentaron *Oposición a Moción de Sentencia Sumaria* el 29 de diciembre de 2025. Estos adujeron que, en virtud de la prueba en el expediente, tenían una acción justiciable contra el Dr. Villafañe, por lo que no procedía una resolución sumaria del pleito. En apoyo a su oposición, sometieron la deposición completa de su médico perito y, a su vez, su informe pericial.

El Tribunal de Primera Instancia, el 23 de febrero de 2026, emitió *Resolución* en la cual, entre otras cosas, dispuso lo siguiente:

### DETERMINACIONES DE HECHOS

1. El 26 de noviembre de 2021, el Sr. José Echevarría Jusino acudió a la Sala de Emergencias del MMC acompañado de su madre.

2. El motivo de la visita fue la ingesta de alrededor de 28 pastillas de Clonazepam, Risperdal y Aspirina.

3. El Dr. Wilfredo Gutiérrez Cotto atendió al Sr. Echevarría Jusino en la sala de emergencias.

4. El 27 de noviembre de 2021, el Dr. Gutiérrez Cotto emitió una consulta para evaluación médica del paciente.

5. Ese día, el Dr. Villafañe Figueroa contestó dicha consulta cuya evaluación reflejó que el Sr. Echevarría Jusino estaba alerta, con signos vitales dentro de parámetros normales, salvo una presión arterial levemente elevada (143/75), y sin evidencia de desequilibrio electrolítico ni de inestabilidad hemodinámica.

6. La consulta fue discutida con la Dra. J. Santiago.

7. El codemandado, Dr. Roy Villafañe Figueroa, es médico residente del Programa de Medicina de Familia de Manatí Medical Center.

**Por otro lado, determinamos que los siguientes hechos se encuentran en controversia, ya que no encuentran apoyo en evidencia documental alguna**:

1. Si el Dr. Villafañe Figueroa volvió a intervenir con el paciente luego de la evaluación realizada el 27 de noviembre de 2021.

2. Si el Dr. Villafañe Figueroa actuó conforme a las instrucciones de su supervisora y dentro de los límites de su función de médico residente, cumpliendo con las órdenes médicas y protocolos establecidos por el hospital.

3. Si el Dr. Villafañe Figueroa responde por los daños alegados en la demanda.

Consecuentemente, el foro primario, declaró **NO HA LUGAR** la solicitud de sentencia sumaria presentada por el codemandado, Dr. Roy Villafañe Figueroa.

El 23 de febrero de 2026, la parte peticionaria presentó *Solicitud de Reconsideración*. El Tribunal de Primera Instancia, el 24 de febrero de 2026, emitió la siguiente *Resolución*:

Examinada la "Solicitud de Reconsideración" presentada por el Dr. Roy Villafañe Figueroa y su aseguradora Sindicato de Aseguradores para la Suscripción Conjunta de Seguros de Responsabilidad Médico-Hospitalaria (SIMED); se declara **NO HA LUGAR**. Se mantiene la Resolución emitida el 6 de febrero de 2026, en todos sus extremos.

Inconforme, la parte peticionaria acudió ante este foro revisor mediante el recurso de *certiorari* de epígrafe, en la cual esgrimió los siguientes señalamientos de error:

PRIMER ERROR: "Erró el Tribunal de Primera Instancia al concluir que la parte demandada – apelante no cumplió con la Regla 36.3(a)(4) de Procedimiento Civil por no presentar evidencia suficiente que apoyara los hechos no controvertidos en la Moción Solicitando Sentencia Sumaria".

SEGUNDO ERROR: "Erró el Tribunal de Primera Instancia al declarar NO HA LUGAR la Moción Solicitando Sentencia Sumaria al sostener que existen controversias sobre hechos materiales, cuando de la propia evidencia sometida por la parte demandante – apelada surge lo contrario".

TERCER ERROR: "Erró el Tribunal de Primera Instancia al no reconocer la prueba pericial presentada en la Moción Solicitando Sentencia Sumaria, y sometida por la parte demandante -apelado, aun siendo este el método establecido en nuestro ordenamiento jurídico para probar casos de daños y perjuicios por impericia médica".

Transcurrido el término con el que disponían los recurridos para someter su posición, y sin que estos presentaran su alegato en oposición, procedemos a resolver sin el beneficio de su comparecencia.

**II**

### A. El Certiorari

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020).[1] Ahora bien, tal "discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones,[2] dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas". *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008) (citas omitidas); *Pueblo v. Rivera Montalvo*, supra, pág. 372; *Torres González v. Zaragoza Meléndez*, supra, pág. 848. La precitada Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

---

[1] Véase también, *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).

[2] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, In re Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, pág. __, 215 DPR __ (2025). https://dts.poderjudicial.pr/ts/2025/2025tspr42.pdf

(C)   Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D)   Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E)   Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F)   Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G)   Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[3]

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva". *García v. Padró*, 165 DPR 324, 327 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97.

El certiorari, como recurso extraordinario discrecional, debe ser utilizado con cautela y solamente por razones de peso. *Pueblo v. Díaz de León*, 176 DPR 913, 918 (2009). Este procede cuando no está disponible la apelación u otro recurso que proteja eficaz y rápidamente los derechos del peticionario. *Íd.*; ver también *Pueblo v. Tribunal Superior*, 81 DPR 763, 767 (1960). Nuestro Tribunal Supremo ha expresado también que:

[D]e ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal

---

[3] *Íd.*

o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial. *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000); *Rivera et al. v. Arcos Dorados et al.*, supra, pág. 210.

## B. Sentencia Sumaria

La sentencia sumaria es un mecanismo procesal disponible en nuestro ordenamiento que nos permite resolver controversias sin que se requiera llegar a la etapa de juicio. *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964, 979 (2022); *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 992 (2023); *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601, 610 (2023); *Birriel Colón v. Econo y Otros*, 213 DPR 80, 90 (2023). La sentencia sumaria está regida por la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, la cual desglosa los requisitos específicos con los que debe cumplir esta norma procesal. *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 224 (2015).

Ante la ausencia de una controversia sustancial y real sobre hechos materiales, sólo resta aplicar el derecho pertinente a la controversia. *Serrano Picón v. Multinational Life Ins.*, supra, pág. 992. Cuando se habla de hechos materiales, nos referimos a aquellos que pueden determinar el resultado de la reclamación, de conformidad con el derecho sustantivo aplicable. Así pues, el propósito de la sentencia sumaria es facilitar la pronta, justa y económica solución de los casos que no presenten controversias genuinas de hechos materiales. *Alicea Pérez v. Coop. Seg. Múlt. et al.*, 210 DPR 71, 76 (2022).

Procede dictar sentencia sumaria si de las alegaciones, deposiciones y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia admisible, se acredita la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y material y, además, si procede en derecho. *SLG Fernández-Bernal v. RAD-MAN*, 208 DPR 310, 335 (2021). De la

prueba adjunta a la solicitud de sentencia sumaria, deberá surgir preponderadamente la inexistencia de controversia sobre los hechos medulares del caso. *Birriel Colón v. Econo y Otros*, supra, pág. 91.

Cónsono con esto, en el pasado el Tribunal Supremo de Puerto Rico ha afirmado que—utilizado ponderadamente—el mecanismo de sentencia sumaria es un vehículo idóneo para descongestionar los calendarios de los tribunales y evitar el derroche de dinero y tiempo que implica la celebración de un juicio en su fondo. *Pérez Vargas v. Office Depot*, 203 DPR 687, 699 (2019).

La Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, detalla el procedimiento que deben seguir las partes al momento de solicitar que se dicte una sentencia sumaria. A esos efectos, establece que una solicitud al amparo de ésta deberá incluir:

> (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V. R. 36.3. Ver también *Rodríguez García v. UCA,* 200 DPR 929, 940 (2018).

Cumplidos estos requisitos, las Reglas de Procedimiento Civil, en el inciso (e) de la Regla 36.3 establece que:

> La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente. El tribunal podrá dictar sentencia sumaria de naturaleza interlocutoria para resolver cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o contra cualquier parte en el pleito. Si la parte contraria no presenta la contestación a la sentencia

sumaria en el término provisto en esta regla, se entenderá que la moción de sentencia sumaria queda sometida para la consideración del tribunal. 32 LPRA Ap. V, R. 36.3 (e).

La sentencia sumaria no procederá en las instancias que: "1) existan hechos materiales y esenciales controvertidos; 2) haya alegaciones afirmativas en la demanda que no han sido refutadas; 3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o 4) como cuestión de derecho, no proceda". *SLG Fernández-Bernal v. RAD-MAN*, supra, págs. 335-336; *Serrano Picón v. Multinational Life Ins.*, supra, pág. 992.

En armonía con la normativa reseñada, nuestra Máxima Curia ha expresado que, el oponente debe controvertir la prueba presentada con evidencia sustancial y no puede simplemente descansar en sus alegaciones. *Birriel Colón v. Econo y Otros*, supra, pág. 90; *Ramos Pérez v. Univisión*, 178 DPR 200, 215-216 (2010). Las meras afirmaciones no bastan. *Íd*. "Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente". *Ramos Pérez v. Univisión*, supra, pág. 215 (cita omitida); *Roldán Flores v. M. Cuebas, Inc.*, 199 DPR 664, 677 (2018).

Además, se le exige a la parte que se opone ciertas exigencias adicionales. Primeramente, deberá presentar una relación concisa y organizada de los hechos esenciales y pertinentes que, a su juicio, estén en controversia, donde, a su vez, cita específicamente los párrafos según fueron enumerados por el promovente de la moción. *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 336. También, la parte opositora deberá enumerar los hechos que no estén en controversia, con indicación de los párrafos o páginas de las declaraciones juradas u otra prueba admisible donde se establezcan

estos. *Íd.* En adición, deberá esbozar las razones por las cuales no se debe dictar sentencia sumaria, con referencias precisas al derecho aplicable. *Íd.* Si el oponente no controvierte los hechos propuestos de la forma en la que lo exige la Regla 36.3 de Procedimiento Civil, *supra,* se podrán considerar como admitidos y se dictará la Sentencia Sumaria en su contra, si procede. *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 677.

Respecto a la revisión de las sentencias sumarias, el foro apelativo deberá utilizar los mismos criterios que el Tribunal de Primera Instancia. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 114 (2015); *González Meléndez v. Mun. San Juan*, supra, pág. 611. Nuestro Máximo Foro ha sido claro en que, "[l]os tribunales apelativos estamos limitados a: (1) considerar los documentos que se presentaron ante el foro de primera instancia; (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó de forma correcta". *Birriel Colón v. Econo y Otros*, supra, pág. 91; *Roldán Flores v. M. Cuebas*, supra, pág. 679. De acuerdo con lo anterior, el foro apelativo está obligado a examinar *de novo* la totalidad de los documentos incluidos en el expediente de la forma más favorable al promovido. *Íd.*, en las págs. 91-92. Ver también *Serrano Picón v. Multinational Life Ins.*, supra, pág. 993; *Meléndez González et al. v. M. Cuebas*, supra, pág. 118.

Por último, el mecanismo de sentencia sumaria no es apropiado para ventilar casos donde hay elementos subjetivos o donde se alega que hubo negligencia. *Ramos Pérez v. Univisión*, supra, pág. 219 (2010); *Jusino et al. v. Walgreens*, 155 DPR 560, 579 (2001). La misma norma ha sido implementada en el foro federal. *Véase* Wright and Miller, *Federal Practice & Procedure*, Civil 3d ed., sec. 2729. Diversos Circuitos federales, al interpretar la Regla 56

de las Reglas de Procedimiento Civil federal,[4]han concluido que el mecanismo de sentencia sumaria es inadecuado para dirimir controversias sobre si medió negligencia. *Íd.* Dicha norma está fundamentada, en parte, en el hecho de que las preguntas relativas a negligencia suelen ir ante un jurado. Por otro lado, en el foro estatal, la figura del jurado no opera en pleitos civiles, por lo que dicha justificación no acarrea el mismo peso en nuestra jurisdicción. No empece lo anterior, nuestro Tribunal Supremo ha citado con aprobación dicho desarrollo jurisprudencial.[5]

### C. *Impericia Médica*

Como es sabido, las obligaciones que nacen de la culpa o la negligencia se rigen por lo dispuesto en el Artículo 1536 del Código Civil, 31 LPRA sec. 10801, el cual establece que quien "por culpa o negligencia causa daño a otra, viene obligada a repararlo". Para que prospere una reclamación por daños y perjuicios al amparo del referido precepto legal, se requiere la concurrencia de tres elementos, los cuales tienen que ser probados por la parte demandante, a base de preponderancia de la prueba. Estos son: (1) el acto u omisión culposa o negligente; (2) la relación causal entre el acto u omisión culposa o negligente y el daño ocasionado; y (3) el daño real causado al reclamante. *Sucesión Mena Pamias v. Meléndez Jiménez*, 212 DPR 758, 768 (2023); *Cruz Flores v. Hosp. Ryder Mem'l Inc.*, 210 DPR 465, 483-484 (2022).

La culpa o negligencia consiste en la falta del debido cuidado, esto es, no anticipar ni prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en tales circunstancias. *Íd.*; *Pérez et al. v. Lares Medical et*

---

[4] Nuestra Regla 36 utilizó la regla federal como modelo, por lo que la jurisprudencia interpretativa del análogo federal resulta ilustrativa. Ver *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 475 (2013); *Ramos Pérez v. Univisión,* supra, pág. 212; *Medina v. M.S.& D. Química P.R., Inc.*, 135 DPR 716, 731 (1994).

[5] *Íd.*

*al.*, 207 DPR 965, 976-977 (2021). Para determinar si el resultado era razonablemente previsible, es preciso acudir a la figura de la persona prudente y razonable, que es aquella persona que actúa con el grado de cuidado, diligencia, vigilancia y precaución que exigen las circunstancias. *Nieves Díaz v. González Massas*, 178 DPR 820, 844 (2010). El deber de cuidado incluye, tanto la obligación de anticipar, como la de evitar la ocurrencia de daños, cuya probabilidad es razonablemente previsible. No obstante, el deber de previsión no se extiende a todo riesgo posible. *Cruz Flores v. Hosp. Ryder Mem'l Inc.*, supra, pág. 484. Será necesario evaluar si después del acto, ponderado de forma respectiva, el daño aparece como la consecuencia razonable y ordinaria del alegado acto negligente. *Íd.*

Conforme a lo anterior, en Puerto Rico rige la teoría de la causalidad adecuada, la cual postula que "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general". *López v. Porrata Doria*, 169 DPR 135, 151-152 (2006). Es decir, es necesario que entre el acto culposo o negligente y el daño sufrido exista un nexo causal adecuado. *Cruz Flores v. Hosp. Ryder Mem'l Inc.*, supra. En *Rivera v. S.L.G. Díaz*, nuestro más Alto Foro señaló que la relación causal, elemento imprescindible en una reclamación en daños y perjuicios, "es un elemento del acto ilícito que vincula al daño directamente con el hecho antijurídico". *Rivera v. S.L.G. Díaz*, 165 DPR 408, 422 (2005). La relación directa entre el daño y la consecuencia razonable es la que permite concluir que el acto torticero alegado es la causa adecuada del daño reclamado. *Cruz Flores v. Hosp. Ryder Mem'l Inc.*, supra, pág. 485.

Por otro lado, en nuestro ordenamiento jurídico, la responsabilidad civil extracontractual por impericia médica surge del precitado Art. 1536 del Código Civil, *supra.* La imposición de responsabilidad civil extracontractual a un facultativo médico

proviene de la "norma mínima de cuidado médico exigible a la luz de los modernos medios de comunicación y enseñanza y conforme al estado de conocimiento de la ciencia y la práctica prevaleciente de la medicina, que satisfacen las exigencias generalmente reconocidas por la profesión". *Cruz Flores v. Hosp. Ryder Mem'l Inc.*, supra, pág. 487. En una acción por impericia médica se requiere que la parte demandante demuestre la existencia de una acción u omisión negligente, un daño sufrido como consecuencia de tal acción u omisión y una relación causal entre ambos. *López v. Doctor Cañizares*, 163 DPR 119, 133 (2004). Es importante que se demuestre que la existencia de la relación de causalidad entre el daño y el alegado acto negligente no se basa en conjeturas, sino que ello sea probado mediante la preponderancia de la prueba. *Íd.*, en la pág. 134; *Admor. F.S.E. v. Almacén Ramón Rosa*, 151 DPR 711, 724 (2000); *Santiago Otero v. Méndez*, 135 DPR 540, 549 (1994).

Esbozado el derecho que enmarca la controversia de epígrafe, procedemos a aplicarlo.

**III**

La parte peticionaria nos solicita que revisemos la *Resolución* emitida por el foro primario. En su petición, señala que el foro *a quo* cometió tres errores al rehusarse a disponer del pleito de forma sumaria. En su primer señalamiento de error, la parte peticionaria esgrimió que erró el foro primario al concluir que estos no habían cumplido con el requisito de la Regla 36.3(a)(4) en su *Moción en Solicitud de Sentencia Sumaria*. No le asiste la razón.

La Regla 36.3(a)(4), *supra*, pauta que toda moción de sentencia sumaria debe incluir "una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, **con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se**

**establecen estos hechos**, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal". (Énfasis suplido). Esta Curia está facultada para revisar el cumplimiento con los requisitos establecidos en las reglas. *Roldán Flores v. M. Cuebas*, supra, pág. 679.

Una minuciosa revisión de la *Moción en Solicitud de Sentencia Sumaria* revela que la parte peticionaria incumplió con lo establecido en la Regla 36.3(a)(4), en tanto no acompañó su relato de hechos con citas a la prueba que sustentaran sus determinaciones. Tal es el caso de los hechos uno, dos, tres, cuatro, cinco, siete, ocho, nueve, diez y once. En particular, el hecho número nueve hace referencia a un protocolo del hospital que no consta en el expediente. Por ende, no erró el foro primario al concluir que la parte peticionaria había incumplido con la Regla 36.3(a)(4).

Por otro lado, en su segundo señalamiento de error, la parte peticionaria le imputó al Tribunal de Instancia el haber declarado No Ha Lugar su solicitud de sentencia sumaria, a pesar de que, de la prueba del demandante, surge que no hay hechos materiales en controversia. No nos convence.

Como reseñamos anteriormente, el foro *a quo* encontró que había tres hechos materiales que aún estaban en controversia. De acuerdo con el estándar de revisión esbozado por nuestro Máximo Foro, es nuestra tarea analizar si, en efecto, existen hechos materiales en controversia. *Roldán Flores v. M. Cuebas*, supra, pág. 679. Esto, a la luz de los documentos anejados con las mociones, y la prueba que consta en el expediente. *Íd.*

El primer hecho material que el foro primario designó en controversia fue: "[s]i el Dr. Villafañe Figueroa volvió a intervenir con el paciente luego de la evaluación realizada el 27 de noviembre de

2021".[6] No obstante, surge del expediente que no hay controversia genuina sobre ese particular. Ambas partes concuerdan que el Dr. Villafañe no volvió a atender al paciente JEEJ el 27 de noviembre de 2021. Esto surge de las alegaciones de la demanda y de la deposición del perito de los recurridos, anejada a su *Oposición a Moción de Sentencia Sumaria.*

De la *Demanda* se desprende que los recurridos le imputan negligencia a los doctores Villafañe y Santiago al contestar la consulta, no por atender negligentemente al paciente, o por haber dejado de atenderlo, luego de realizar dicha evaluación. Esta posición se puede apreciar igualmente en la opinión del doctor Pérez Pabón, perito de la parte recurrida. En particular, este expresó que la intervención del Dr. Villafañe "terminó ahí", refiriéndose al momento en que respondió a la consulta.[7] El doctor Pérez Pabón también indicó que la única intervención del Dr. Villafañe fue cuando atendió la consulta del doctor Wilfredo Gutiérrez.[8] Incluso, el informe pericial redactado por el doctor Pérez Pabón describe la intervención del Dr. Villafañe como haber dado "visto bueno al traslado", sin detallar que hubiera vuelto a tratar al paciente.[9] En virtud de lo anterior, colegimos que este hecho no está en controversia, conforme a la totalidad del expediente.

El segundo hecho que el Tribunal *a quo* entendió que estaba en controversia fue si "el Dr. Villafañe Figueroa actuó conforme a las instrucciones de su supervisora y dentro de los límites de su función de médico residente, cumpliendo con las órdenes médicas y protocolos establecidos por el hospital".[10] Un examen del expediente revela que el foro primario no estaba en posición de dirimir si, en efecto, la conducta del Dr. Villafañe fue en conformidad con los

---

[6] SUMAC TPI, Entrada Núm. 142, *Resolución*, pág. 6. En adelante, *Resolución.*
[7] SUMAC TPI, Entrada Núm. 140, Anejo Núm. 2, pág. 81.
[8] *Íd.,* en las págs. 83-85.
[9] SUMAC TPI, Entrada Núm. 140, Anejo Núm. 1, pág. 2.
[10] *Resolución,* pág. 6.

protocolos del hospital, toda vez que, dicho protocolo no obra en el expediente, ni fue sometido por la parte peticionaria en su moción. Tampoco hay prueba que esclarezca si el Dr. Villafañe se ciñó a las instrucciones que hubiera recibido de parte de su supervisora.

Sí hay prueba sobre dos particulares: en primer lugar, que el Dr. Villafañe era médico residente del Manatí Medical Center para la fecha de los hechos, y, en segundo lugar, que la Dra. Santiago firmó y aprobó la evaluación realizada por el Dr. Villafañe.[11] Estos dos elementos de por sí, no resuelven las controversias antes descritas. Por ello, no erró el foro primario en determinar que dicho hecho aún estaba en controversia, lo que impedía una adjudicación sumaria.

Adicionalmente, el Tribunal de Primera Instancia dictó que había controversia sobre "[s]i el Dr. Villafañe Figueroa responde por los daños alegados en la demanda"[12] Coincidimos con la apreciación del foro primario. Previo a detallar los pormenores fácticos que subyacen esta determinación, resulta prudente resaltar la norma que establece que, en la mayoría de los casos donde se imputa negligencia, no es apropiado descartar el pleito por la vía sumaria. *Ramos Pérez v. Univisión*, supra, pág. 219 (2010). Dado a que este pleito versa sobre una presunta impericia médica, donde se le imputa al Dr. Villafañe el haberse desviado del estándar médico aplicable, debemos de tener especial cuidado de observar que el despacho sumario del pleito no resulte ser un remedio inadecuado.

Un examen riguroso de los documentos sometidos en las mociones, y disponibles en el expediente, revelan que hay una controversia genuina sobre, en primer lugar, si la conducta del Dr. Villafañe fue negligente y, segundo, si existe un nexo causal entre la presunta conducta y los daños alegados en la demanda. Esta

---

[11] SUMAC TPI, Entrada Núm. 134, Anejo 1, *Addendum.*
[12] *Resolución,* pág. 7.

determinación requiere que el Juzgador de los hechos desfile prueba y adjudique credibilidad. También exige que se evalúe si la conducta está acorde con el estándar de la persona prudente y razonable, y si el Dr. Villafañe falló en prever las consecuencias razonables de sus actos y omisiones. Dichas interrogantes no hallan respuestas en el expediente ni pueden ser propiamente adjudicadas sin la celebración de un juicio. En virtud de lo expuesto, colegimos que no se cometió el segundo error.

Por último, en su tercer señalamiento, el Dr. Villafañe arguye que el foro primario no le dio la credibilidad que ameritaba la prueba pericial que tuvo ante su consideración. No coincidimos.

Razonan los peticionarios que el testimonio pericial ofrecido por los recurridos establece con claridad que el Dr. Villafañe no incurrió en impericia. No obstante, no le asiste la razón. Todo lo contrario, la opinión del doctor Pérez Pabón es que "la desviación de la buena práctica [del Dr. Villafañe] fue el recomendar que se trasladara". [13] Esa fue su "observación y señalamiento de negligencia".[14] La transcripción de la deposición del perito de la parte recurrida también registra el siguiente intercambio:

> [Pregunta del Licenciado Soler Ochoa] ¿Qué relación causal hay entonces entre lo que hicieron estos médicos, Santiago y Villafañe, asumiendo que hubiese sido normal, con el triste fallecimiento de este muchacho?
> …
> DEPONENTE - DR. MANUEL PÉREZ PABÓN:
> R. Pues lo que indicamos, de que no hicieron una evaluación adecuada considerando lo que tenían que considerar a la luz de lo que no se había hecho durante todo ese sinnúmero de horas en un paciente intoxicado con salicilato, que lo menos que necesitaba es que alguien le diera un visto bueno a una facilidad psiquiátrica.
>
> Tuvieron la oportunidad de revertir el proceso a tiempo porque era a las seis [6:00] de la mañana. El paciente duró hasta las tres [3:00] de la tarde. De ellos haber

---

[13] SUMAC TPI, Entrada Núm. 140, Anejo Núm. 2, pág. 81.
[14] *Íd.*, en la págs. 81-82.

recomendado lo que tenían que recomendar no hubiera muerto.[15]

A preguntas del Licenciado Soler Ochoa sobre qué debieron haber hecho los doctores Villafañe y Santiago, el doctor Pérez Pabón contestó:

> Debieron haber evaluado al paciente totalmente como era de ser, como era debido, a la luz de lo que se espera de los estándares esperados de las intoxicaciones con salicilato. No lo hicieron, se confiaron, inapropiadamente le dieron el visto bueno a un paciente que estaba a un alto riesgo de morir, como sucedió después.[16]

Contrario a lo descrito por los peticionarios, la prueba pericial suplida por los recurridos no establece con claridad que estos no tengan derecho a su reclamación. Lo cierto es que el testimonio pericial, el cual no ha sido estipulado por las partes, le imputa a al Dr. Villafañe el haber actuado con negligencia, y que dicha negligencia fue parte de la causa de la muerte del joven JEEJ. Si bien dichas declaraciones no son suficientes para resolver a favor de los recurridos, tampoco son lo suficiente como para establecer los hechos materiales del caso sin duda alguna.

Por todo lo anterior, somos del criterio que no se cometió el tercer error.

### IV

Por los fundamentos que anteceden, se expide el *certiorari* y se modifica la *Resolución* recurrida, únicamente a los fines de establecer que no existe controversia genuina sobre si el Dr. Villafañe volvió a atender al joven JEEJ luego de contestar la consulta, consignado en la *Resolución* como el primer hecho en controversia. Así modificada, se confirma la *Resolución* recurrida.

Notifíquese.

---

[15] *Íd.*, en la pág. 87.
[16] *Íd.*, en la pág. 89.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones